**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

MARTIN C.,

Plaintiff,

v.

FRANK BISIGNANO,
*Commissioner of Social Security,*

Defendant.

Case No. 25-CV-2301 (JRT/JFD)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on the Complaint of Plaintiff Martin C.[1] (Dkt. No. 1) seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision by the Commissioner of Social Security, who denied his application for supplemental security income ("SSI") for the period of time after his alleged disability onset date, September 2, 2018. (Pl.'s Br. 1–2, Dkt. No. 9.)[2] Plaintiff states he is living with "bilateral knee joint osteoarthritis and patellofemoral syndrome, cervical and lumbar degenerative disc disease, left shoulder degenerative joint disease, and major depressive disorder." (*Id*. at 3.) Plaintiff challenges the Commissioner's final decision on the asserted grounds that the Administrative Law Judge ("ALJ") committed an error of law in assessing Plaintiff's residual functional capacity ("RFC") when the ALJ failed to consider the impact of all

---

[1] The District of Minnesota uses only first names and last initials for Plaintiffs in Social Security cases.

[2] Citations to the parties' briefing use the pagination generated by CM/ECF and placed on the top of each page.

medically determinable impairments in that RFC. (*Id.*) Plaintiff also asserts that the ALJ committed reversible error by failing to offer a reasonable explanation for conflicts between the vocational expert's testimony and the potential jobs the expert testified that the Plaintiff could perform. (*Id.*) Finally, the Plaintiff claims that the ALJ erroneously relied on the vocational expert's unsupported testimony when the ALJ concluded that Plaintiff was not disabled. (*Id.*)

The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. The undersigned finds that the ALJ did not err by failing to consider Plaintiff's knee pain—and Plaintiff's resulting need to use a cane—in determining Plaintiff's RFC. However, the ALJ did err by failing to elicit and provide a reasonable explanation for what Plaintiff alleges are unresolved conflicts between hearing testimony from the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT").[3] Accordingly, the undersigned finds that the ALJ's decision is not supported by substantial evidence and recommends remanding this matter to the Social Security Administration for further proceedings as to the ALJ's step five analysis.

---

[3] The U.S. Department of Labor publishes the DOT to provide "standardized occupational information to support job placement activities." DOT, Introduction, 1991 WL 645964 (4th ed., rev., 1991). The nine-digit number is the occupational code number. DOT, Parts of the Occupational Definition, 1991 WL 645965 (4th ed., rev., 1991). The Specific Vocational Preparation ("SVP") component represents the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, app. C, 1991 WL 688702 (4th ed., rev., 1991).

## I. Background

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the Disability Insurance program under Title II of the Social Security Act and the Supplemental Security Income ("SSI") program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Only SSI benefits are at issue here. SSI is a public assistance program that provides support to people with disabilities, whether or not they have paid social security taxes, who demonstrate financial need. *Smith*, 587 U.S. at 475; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose).

### A. Plaintiff's Application for Supplemental Security Income

On July 21, 2022, Plaintiff applied for SSI under Title XVI of the Social Security Act. (Pl.'s Br. 2, Dkt. No. 9.) The alleged onset date of Plaintiff's disability is September 2, 2018. (Tr. 18.)[4] Plaintiff alleges his disability is due to "bilateral knee joint osteoarthritis and patellofemoral syndrome, cervical and lumbar degenerative disc disease, left shoulder degenerative joint disease, and major depressive disorder." (Pl.'s Br. at 3.) Plaintiff's claims were first denied on December 8, 2022 and again upon reconsideration on May 1, 2023. (*Id*. at 2.) Plaintiff filed a request for a hearing with an ALJ on July 13, 2023. (*Id.*) The ALJ held a hearing on February 8, 2024. (*Id.*) On March 20, 2024, the ALJ decided

---

[4] The Court adopts the parties' practice of citing to the Social Security Administration Record (Dkt. No. 6) as "Tr." and using the pagination generated by the Administration. That pagination is at the bottom right of each page.

that Plaintiff did not meet the Social Security Act's definition of disability for the period of the alleged onset of disability through the decision date. (*Id.*) That decision ultimately became the final decision of the Commissioner, which Plaintiff now appeals to this Court.

Important here, the ALJ specifically found that Plaintiff has "complaints of knee pain and reports using a cane for this. However, imaging of the knees was normal and his physical exams regarding his knees are largely normal." (Tr. 21.) The ALJ concluded that Plaintiff's knee pain "is a [sic] not considered a medically determinable impairment." (*Id.*) Though the ALJ found that Plaintiff reports an inability to "stand and sit for a long period of time," "lift anything more than 20 pounds," "walk long distances," or "cook a full meal without taking breaks," (Tr. 23–24), he also found that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 24.) The ALJ found that, although the Plaintiff lists September 2018 as the date of onset of his disability, no medical records exist prior to 2021.

As to the ALJ's determination of whether the Commissioner had met its burden to show that Plaintiff could perform jobs that exist in significant numbers in the national economy, the ALJ found that

> the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT). The vocational expert testified that the DOT does not differentiate between different types of reaching and that his testimony regarding this was based on his education, research, training and experience with placement in vocational rehabilitation. He also testified that the document preparer job has changed since the DOT was written, but the physical, educational, cognitive and social demands of that work remain consistent with the DOT.

(Tr. 29)

**B. Plaintiff's Argument**

Plaintiff argues that the ALJ committed reversible error of law by failing to incorporate Plaintiff's knee pain into his determination of Plaintiff's RFC and that the RFC, as a result, is not supported by substantial evidence in the record as a whole.

Plaintiff also argues that the ALJ committed reversible error by failing to elicit a reasonable explanation for conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"), used to determine jobs that exist in the national economy and their functional requirements. This objection is largely based on Plaintiff's assertion that the vocational expert testified that Plaintiff could perform the work required in three jobs, which, pursuant to the DOT, require frequent reaching, even though Plaintiff's RFC was limited to occasional overhead reaching. (Pl.'s Br. 15–16, Dkt. No. 9.) In response to this conflict, the vocational expert testified that "[t]hese jobs do not require much overhead reaching at all, if any, but certainly not more than occasional and I base that on my education, research, training and experience in job placement and vocational rehabilitation." (Tr. 167-68.) Plaintiff characterizes this response as conclusory and insufficient to provide a basis for deviating from limitations listed in the DOT.

**C. Legal Standards**

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the

Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the Commissioner. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

In reviewing a claim for disability benefits, an administrative law judge determines whether a person is disabled using the five-step analysis that is described in the regulations. *See* 20 C.F.R. § 404.1520. For the first four steps, the claimant bears the burden of proof. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). Steps one through four ask: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant is suffering from a severe medical impairment, (3) whether

claimant's impairment meets or equals the severity of an impairment listed in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, App. 1), and (4) whether the claimant has the Residual Functional Capacity (RFC) to perform their past relevant work (PRW). 20 C.F.R. § 404.1520. If the claimant successfully meets their burden of proof for steps one through four, the Commissioner bears the burden at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1505(a), 404.1512(f), 404.1520(a)(4)(v).

If the claimant is not satisfied with the ALJ's decision, they can request that a panel of members of the Social Security Appeals Council review the decision. 20 C.F.R. §§ 404.900(a)(4), 404.968. If the Appeals Council grants review of the ALJ's decision, the Appeals Council's decision on the issue becomes the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). If the Appeals Council denies review, as happened here, the ALJ's decision is the final decision of the Commissioner. *Id.* After obtaining a final decision, claimants can seek review of the Commissioner's decision in federal district court in the district in which they live. *Id.*; 42 U.S.C. § 405(g).

## II. <u>DISCUSSION</u>

At the time of filing, Plaintiff was 48 years old and had a 10th grade education. (Pl.'s Br. 3, Dkt. No. 9.) Among other significant health issues, Plaintiff struggles with chronic knee pain as a result of joint osteoarthritis, which limits his ability to sit, stand, and walk for extended periods of time. (*Id*. at 1, 3.) He first undertook physical therapy for his knee pain in 2022, which did not provide improvement for what he described as his knees swelling, locking up, and giving out. (*Id*. at 4 (citing relevant portions of the record).) In

October of 2023, Plaintiff discussed his knee problems with Dr. Kristel L. Arcilla, who prescribed a knee sleeve, physical therapy, and a cane for bilateral knee joint osteoarthritis. (*Id*. at 4.)

### A. Plaintiff's Knee Pain

Plaintiff focuses his appeal primarily on determinations the ALJ made about Plaintiff's knee pain. Because the ALJ found at step two of the five-step analysis that Plaintiff's knee pain did not constitute a medically determinable impairment, the ALJ did not discuss those issues in his determination of Plaintiff's RFC in step four. In fact, the ALJ wrote only three sentences on Plaintiff's knee pain, which read, "The claimant has complaints of knee pain and reports using a cane for this. However, imaging of the knees was normal and his physical exams regarding his knees are largely normal. As a result, this is a [sic] not considered a medically determinable impairment." (Tr. 21 (citations omitted).)

An impairment is "medically determinable" if it "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *see also* 20 C.F.R. § 404.1529(b); 20 C.F.R. § 404.1521. Another regulation puts a gloss on this, requiring that the impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. A claimant's "statement of symptoms, a diagnosis, or a medical opinion" are not used "to establish the existence of an impairment." *Id*. It is a claimant's burden to demonstrate a severe medically determinable impairment or combination of impairments at step two of the sequential evaluation. *See Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007) (citations omitted). "If the

impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* at 707 (citation omitted); *see* 20 C.F.R. § 404.1520(c). The severity showing "is not an onerous requirement for the claimant to meet, but it is also not a toothless standard...." *Kirby*, 500 F.3d at 708 (citations omitted). It is the claimant's burden to establish that an impairment or combination of impairments is severe. *See Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "However, courts in this District have repeatedly concluded that an ALJ must either include the mild limitations found at step two into the RFC or provide an explanation why they were not included when discussing the RFC." *September L. v. Bisignano*, No. 25-CV-00331 (LMP/ECW), 2026 WL 500755, at *16 (D. Minn. Jan. 29, 2026) (collecting cases), *R & R adopted*, No. 25-CV-331 (LMP/ECW), 2026 WL 498787 (D. Minn. Feb. 23, 2026).

From the record, it appears that Plaintiff began seeking more specialized treatment for his knee pain in December of 2022. At that point, he undertook physical therapy primarily for shoulder pain, but he also complained of bilateral knee pain, which reportedly began in his early 20s. (Tr. 767.) He began knee-specific physical therapy shortly thereafter in October of 2023. At that time, the physical therapist's evaluation indicated that his treatment to date involved consultation with his primary care provider and that he had not undertaken physical therapy treatment specifically for his knee pain to that point. (Tr. 757.) The physical therapist also noted that his knee pain is "provoked with prolonged standing, going from prolonged sitting to walking, and going up and down stairs." (*Id.*) At that point, the physical therapist's assessment was that "[r]ehabilitation potential is guarded based on chronic nature of knee pain symptoms." (Tr. 759.) In late 2023, his pain management

provider, Stephen Vang, PA-C, ordered MRI and x-ray imaging of his knees, and that imaging yielded no abnormal results. (Tr. 807.) After Physician's Assistant Vang did not recommend surgery, Plaintiff sought a second opinion in January 2024 from Jonathan Erickson, MD, an orthopedic surgeon he had seen in the past for his shoulder pain. (*Id.*) Dr. Erickson concurred with PA Vang that there was "no structural abnormality and therefore, no need for any surgical intervention." (Tr. 807.) In January of 2024, Plaintiff was formally diagnosed with knee joint osteoarthritis by PA Vang and received bilateral intra-articular knee joint steroid injections. (Tr. 754.)[5]

As a preliminary matter, Plaintiff only challenges the ALJ's decision to deny benefits for the period between July 21, 2022 and the ALJ's decision on March 20, 2024. (Pl.'s Br. 4, Dkt. No. 9.) Whether Plaintiff's condition has deteriorated since March 20, 2024 is not before the Court. The ALJ stated that part of the reason he did not find Plaintiff to have a more limited RFC was because "despite alleging disabling symptoms as of September 2018, on this record, there are no medical records prior to 2021." (Tr. 24.)

As to the inclusion of Plaintiff's knee issues as a medically determinable impairment at step two, the Court concludes that the ALJ's determination was based on substantial evidence on review of the record as a whole. This decision is based on the fact that the ALJ was provided no "objective medical evidence from an acceptable medical source" that the knee pain had an identifiable medical cause. 20 C.F.R. § 404.1521. Rather, the weight of the evidence in support of a finding that the knee pain is a medically determinable

[5] The Court notes that this diagnosis came almost two years after Plaintiff's original application and a month before the ALJ hearing.

impairment comes from Plaintiff's own "statement[s] of symptoms, a diagnosis, or a medical opinion," which cannot be relied upon in full "to establish the existence of an impairment." *Id*. As the ALJ determined, imaging reviewed by Plaintiff's health care providers returned normal results. (Tr. 21.) After the physician's assistant who assessed his knee pain found these images to be normal, he sought out a second opinion. The doctor providing the second opinion concurred, finding "overall joint spaces to be well-maintained. No fractures or lucencies. Normal radiographs" when reviewing his x-ray images. (Tr. 807.) When reviewing the Plaintiff's MRI, the doctor giving the second opinion stated that the images showed "no pathology. No cartilage defect. No ligament injuries." (*Id*.) This is more than substantial evidence to support the ALJ's conclusion that Plaintiff did not meet his burden of showing that his knee pain was a medically determinable impairment, and the Court recommends that the relief sought in the Plaintiff's brief be denied as to this issue.

**B. DOT Job Definitions versus Expert Testimony**

Plaintiff also claims that the ALJ committed reversible error by failing to elicit a reasonable explanation for what he alleges are unresolved conflicts between hearing testimony from the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT") and that the ALJ provided an inadequate explanation in his written opinion on the reason for his determination that Plaintiff was not disabled at step five of the disability analysis. (Pl.'s Br. 14, Dkt. No. 9.)

Brian Womer, Social Security's vocational expert, provided expert testimony at the hearing. (Tr. 165–71.) Relevant here, VE Womer identified three jobs listed in the DOT

that exist in the national economy and that a person with Plaintiff's work history and RFC (as determined by the ALJ) could perform: 1) document preparer (DOT code 249.587-018); 2) sack repairer (DOT code 782.687-046); and 3) touch-up screener (DOT code 726.684-110). (Tr. 167.) The VE testified that he had seen all three of these occupations performed and that, "base[d] on [his] education, research, training and experience in job placement and vocational rehabilitation," these jobs "do not require much overhead reaching at all." (Tr. 168.) The VE and the ALJ both recognized that the RFC assigned in the hypothetical discussed "overhead reaching," while the DOT definitions discuss "reaching" more broadly. (Tr. 167–68.)

The ALJ limited Plaintiff to "occasional overhead reaching and frequent reaching in all other directions," (Tr. 23), which was consistent with the VE's testimony, but the DOT definitions of document preparer, sack repairer, and touch-up screener require "frequent reaching," without a directional limitation. This lack of directional specificity means the DOT definition includes *frequent* overhead reaching, as opposed to the ALJ's limitation of *occasional* overhead reaching. *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, 07.05.03 (Record Preparation and Maintenance), 06.04.27 (Manual Work, Textile, Fabric, and Leather), 06.03.02 (Inspecting, Grading, Sorting, Weighing, and Recording); *Id.* at Appx. C, p. 3. The Commissioner makes no argument about this alleged conflict. Rather, he focuses his

argument on Plaintiff's challenge to the availability of those jobs in the economy and the purported obsolescence of the document preparer job.[6] (Def.'s Br. 10–11, Dkt. No. 16.)

Social Security Ruling ("SSR") 00-4p clarifies how an ALJ may use hearing testimony from a VE such as Mr. Werner. SSR 00-4p, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000).[7] The ALJ must "rely primarily on the DOT … for information about the requirements of work in the national economy" but may also use evidence from a VE "to resolve complex vocational issues." *Id.* at *2. "When there is an apparent unresolved conflict between [VE] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on" the VE's testimony. *Id.* Part of the ALJ's duty is to "inquire, on the record, as to whether or not there is such consistency." *Id.* When there is a conflict, the ALJ must resolve it by determining whether the VE's explanation

---

[6] The Court is unpersuaded by the Commissioner's argument as to the document preparer job because, between the ALJ's decision and the time the Commissioner's brief in this case was filed, the Social Security Administration itself had concluded that the job was realistically obsolete. *See* Emergency Message EM-24027, *Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process* (Jan. 6, 2025), https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM ("An adjudicator *may not* cite any of the DOT occupations listed below (includes 249.587-018) to support a … "not disabled" determination … without additional evidence from a … VE supporting the adjudicator's conclusion." (emphasis added). The Court does not consider this conclusion binding in this case because it was issued after the ALJ's decision, but it is persuasive evidence supporting Plaintiff's assertion that the occupation is obsolete now and likely was at the time the ALJ's decision was issued, less than a year before the Emergency Message.

[7] The SSA rescinded and replaced SSR 00-4p with SSR 24-3p on January 6, 2025. SSR 24-3p, 2024 WL 5256890, at *1 (S.S.A. Dec. 6, 2024). Because the ALJ's decision was issued before January 6, 2025, the Court applies SSR 00-4p. *See* SSR 24-3p, 2024 WL 5256890, at *2 n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

"is reasonable and provides a basis for relying on" the VE's testimony rather than the DOT. *Id.* A reasonable explanation includes, for example: (1) when evidence from the VE includes information that is not included in the DOT, such as information from the VE's experience; or (2) when the VE is able to provide more specific information about a job than the DOT, such as how a particular job is performed in a specific setting. *Id.* at *2–3. The ALJ "will explain *in the determination or decision* how he or she resolved the conflict" between the VE evidence and the DOT. *Id.* at *4.

Turning first to the ALJ's written decision, the ALJ wrote:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT). The vocational expert testified that the DOT does not differentiate between different types of reaching and that his testimony regarding this was based on his education, research, training and experience with placement in vocational rehabilitation. He also testified that the document preparer job has changed since the DOT was written, but the physical, educational, cognitive and social demands of that work remain consistent with the DOT. Accordingly, I adopt this testimony.

(Tr. 29.) In this paragraph, the ALJ acknowledged the possible conflict between the overhead reaching limitation in his RFC and the general reaching requirements in the DOT definition. He said that he resolved the conflict in favor of the VE's testimony but not *how* he came to that resolution for each job. To carry its burden to prove that Plaintiff can perform jobs that exist in the national economy, the Commissioner must provide more than just boilerplate language blindly adopting the testimony of a VE, and the Commissioner's silence on this issue in his briefing speaks volumes to his understanding of that requirement.

Nor did the ALJ explain orally at the hearing how he resolved the conflict. The ALJ asked the VE, "Now the DOT doesn't differentiate between types of reaching, it just has a single category for reaching. How did you address the limitation that I posed of occasional overhead reaching but frequent in other directions?" (Tr. 167–168.) The VE replied, "These jobs do not require much overhead reaching at all, if any, but certainly not more than occasional and I base that on my education, research, training and experience in job placement and vocational rehabilitation." (Tr. 168.) The Court is satisfied from this exchange that the ALJ "inquire[d], on the record, as to whether or not" the VE's testimony was consistent with the DOT and that the ALJ "elicit[ed]" an explanation for the conflict. *See* SSR 00-4p, 2000 WL 1898704, at *2. But the ALJ did not "explain the resolution of the conflict." *See id.* at *2, 4. The ALJ was required by SSR 00-4p to "explain in the determination or decision" how the conflict was resolved; it was error for the ALJ not to do so, and the discussion between the ALJ and VE during the hearing did not render the error harmless.

When a VE's testimony is not consistent with the DOT, the ALJ must resolve the conflict before he can rely on the testimony in the disability determination. SSR 00-4p, 2000 WL 1898704, at *4. Here, the ALJ's failure to explain the resolution of the conflict means that the ALJ cannot rely on the VE's testimony. This conclusion aligns with another recent Report and Recommendation made by this Court in an analogous case, *Lori A. H. v. Bisignano*, No. 24-CV-2262 (JMB/JFD), 2025 WL 2374304 (D. Minn. July 23, 2025), *R & R adopted*, 2025 WL 2374305 (D. Minn. Aug. 15, 2025). In that case, the Court was "satisfied … that the ALJ inquired … as to whether or not [the VE]'s testimony was

consistent with the DOT and that the ALJ elicited an explanation for the conflict," but it concluded that "the ALJ neither resolved the conflict by determining if the explanation was reasonable nor explained the resolution of the conflict." *Id.* at *6 (cleaned up). While the ALJ's written decision did "resolve the conflict," it did not explain the ALJ's reasoning for the resolution.

If a plaintiff successfully meets their burden of proof for steps one through four, the Commissioner bears the burden at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1505(a), 404.1512(f), 404.1520(a)(4)(v). Here, the parties agree that Plaintiff met his burden at the first four steps of the disability analysis, and the dispute on this issue pertains to the ALJ's determination at step five. (*See* Pl.'s Br. 14, Dkt. No. 9; Def.'s Br. 10, Dkt. No. 16.) In *Lori A. H.*, the Court found that a similar, though more extreme, error at step four, where the claimant bore the burden of proving disability, constituted reversible error. *Lori A. H.* at *6. The Court comes to the same conclusion here, where the Commissioner bears the burden of proof and recommends that the Commissioner's final decision be reversed and the matter be remanded to the SSA because the ALJ did not explain the resolution of the conflict between the VE's testimony and the DOT regarding overhead reaching.

## III. CONCLUSION

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The relief requested in Plaintiff's Memorandum of Law (Dkt. No. 9) be **GRANTED in part and DENIED in part**;
2. The relief requested in Defendant's Brief (Dkt. No. 16) be **GRANTED in part and DENIED in part**; and
3. The final decision of the Commissioner of the Social Security Administration be **REVERSED** and the matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Date: July 24, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).